OPINION
This appeal is taken from a final judgment of the Portage County Court of Common Pleas. Appellant, Joseph L. Bates, appeals from his convictions for bribery and intimidation of a witness following a trial by jury.
After an undercover operation conducted by the Portage County Sheriff's Department, appellant was indicted on one count of bribery, in violation of R.C. 2921.02(A), one count of obstruction of justice, in violation of R.C. 2921.32(A)(4), and one count of intimidation of a witness, in violation of R.C. 2921.04(A).[1] Appellant entered a plea of not guilty to the charges and retained counsel to represent him.
The case against appellant proceeded to trial on August 24, 1999. The state's primary witness at trial was Deputy Elizabeth Hurd ("Deputy Hurd"). She testified that during the afternoon of March 25, 1999, she and Deputy Gregory Johnson ("Deputy Johnson") were investigating a series of burglaries when she received a message from dispatch asking her to call appellant at his home. Appellant had been Deputy Hurd's supervisor when she first started with the department approximately three years ago. Now, however, the two were assigned to work different shifts.
Deputy Hurd called appellant from the patrol car, at which time he informed her that he had something for her to do but that he would talk to her about it later. When she hung the phone up, Deputy Hurd told Deputy Johnson about the call. In response, Deputy Johnson warned Deputy Hurd to be "extremely cautious" in dealing with appellant.
Later that evening, Deputy Hurd called appellant from her home. At that time, appellant explained that his son had been involved in a fight in Trumbull County and that he had been charged with felonious assault. Appellant was concerned because his son had just taken an exam to become a police officer with the Monroe Falls Police Department, but the process was being delayed because of the outstanding criminal matter. As a result, appellant asked Deputy Hurd if she would be willing to talk to one of the witnesses. Deputy Hurd told appellant that she would consider his offer and that he should drop off any information he had about the case.
When she got off the phone with appellant, Deputy Hurd immediately called Deputy Johnson and asked for a tape recorder to document any further conversions with appellant. The two met at a local high school, at which time Deputy Johnson gave her a tape recorder and showed her how to use it.
Shortly after 9:00 p.m., appellant came over to Deputy Hurd's home to give her the paperwork and to discuss the case. According to Deputy Hurd, appellant wanted her to talk with Jennifer Tringhese ("Tringhese") to let her know that she could be facing criminal charges for serving alcohol to underage kids.[2] Deputy Hurd testified that appellant also wanted her to encourage Tringhese to contact the victim, Ben Lewis ("Lewis"). Based on her conservation with appellant, Deputy Hurd believed that the purpose of speaking with Tringhese was to keep the case against appellant's son from going to trial.
Appellant advised Deputy Hurd to talk with Tringhese on her own time, but to carry her badge and firearm. In addition, appellant urged Deputy Hurd to present herself as a deputy sheriff, but not specifically as a Portage County deputy. However, appellant also told her not to run any social security or license plate numbers.
After appellant left, Deputy Hurd once again called Deputy Johnson and told him about the meeting at her house. Concerned, Deputy Johnson suggested that she immediately contact Portage County Sheriff Duane Kaley ("Sheriff Kaley") and tell him about what had occurred.
Deputy Hurd met with Sheriff Kaley that night and again the next morning. She played the tape of the conversation that she had with appellant at her home and turned over the documents that appellant had given her the night before. After hearing the tape, Sheriff Kaley instructed Deputy Hurd to call appellant and tell him that she would talk with Tringhese.
When she returned home, Deputy Hurd called appellant to tell him that she accepted his offer and that she would drive to Niles that weekend. According to Deputy Hurd's testimony, appellant reiterated that he wanted her to talk with Tringhese and put some pressure on her by letting her know that she could be facing criminal charges for her involvement in the situation with appellant's son. He also agreed to pay Deputy Hurd for her services. Approximately thirty minutes later, appellant called Deputy Hurd back to give her Larry Sedita's ("Sedita") phone number. Sedita was the attorney representing appellant's son in the criminal matter.
Deputy Hurd did not talk with Tringhese that weekend. Instead, she met with Sheriff Kaley on March 29, 1999, to bring him up to date on the case. Sheriff Kaley told Deputy Hurd to call appellant and tell him that she had gone to Niles and had spoken with Tringhese.
Deputy Hurd went home and called appellant and told him she had done what he had asked. She then gave appellant a price for her expenses ($180), and set up a time for the two to meet.
Before the meeting, Deputy Hurd met with other members of the Portage County Sheriff's Department to be fitted with a wire. Once at the meeting, appellant asked Deputy Hurd what she had found out about Lewis, and how Tringhese reacted to knowing that she was serving alcohol to underage kids. He then gave Deputy Hurd $180 in cash.
In addition to Deputy Hurd, the state also presented the testimony of Deputy Johnson, Sheriff Kaley, Sergeant James Carrozzi, Deputy Frank Lesho, and a signal analyst with the F.B.I. The state also introduced into evidence the recordings made by Deputy Hurd, along with written transcripts of the tapes.
At the conclusion of the state's case, the trial court dismissed the obstruction of justice charge. The case then proceeded on the two remaining counts.
Appellant testified on his own behalf at trial. He told the jury that Sedita had indicated a private investigator was necessary to help with his son's case. Appellant, however, told Sedita that he did not have the money needed to retain one of his investigators. As a result, appellant suggested that he could get an off-duty officer to do the investigation. According to appellant, Sedita agreed with this arrangement and even recommended that they retain a woman to do the job.[3]
Appellant's testimony essentially followed that of Deputy Hurd with respect to their conversations. However, he did tell the jury that there was at least one unrecorded conversation, and that the tapes were incomplete. Furthermore, he emphasized that he told Deputy Hurd to not do anything "under color of office," and that he never intended "to do anything wrong whatsoever."
After five days of testimony, the jury returned a verdict finding appellant guilty of both charges. On September 8, 1999, appellant filed a motion for new trial. At the sentencing hearing conducted on October 6, 1999, the trial court denied the motion for new trial and sentenced appellant to concurrent one hundred eighty-day sentences.
From this judgment entry, appellant filed a timely notice of appeal with this court. He now raises the following assignments of error for our consideration:
 "[1.]The trial court erred by failing to define an essential element of the offense of intimidation of a witness. (T.p. 729-730)
 "[2.] The trial court erred by injecting a term into the instructions on intimidation of a witness which is not contained in the definition of the offense. (T.p. 729-730)
 "[3.] Appellant was denied the effective assistance of counsel by counsel's failure to object to the erroneous jury instructions on intimidation of a witness.
 "[4.] The trial court erred by omitting an essential element of the offense of bribery in the jury instructions. (T.p. 728-729)
 "[5.] Appellant was denied the effective assistance of counsel by counsel's failure to object to the erroneous jury instructions on bribery.
 "[6.] The conviction for bribery is not supported by sufficient evidence.
 "[7.] The conviction for intimidation of a witness is not supported by sufficient evidence.
 "[8.] The convictions are against the weight of the evidence."
 Appellant's first, second, and fourth assignments of error all involve the instructions given to the jury by the trial court. As a result, we will consider them in a consolidated fashion.
Under his first assignment of error, appellant argues that the trial court failed to define an essential element of intimidation of a witness. Specifically, appellant maintains that the trial court did not instruct the jury on the meaning of "attempt," and because of this omission, appellant believes the jury did not have all the necessary information before it to render an informed verdict.
Appellant admits that he failed to object with respect to this alleged omission. Accordingly, he has waived all but plain error with respect to the instruction in question. Crim.R. 30(A) provides in pertinent part:
 "On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection."
 Pursuant to this rule, the failure to object to a jury instruction in a timely manner generally constitutes a waiver of any claimed error relative to the instructions. State v. Holley (Dec. 17, 1999), Ashtabula App. No. 98-A-0089, unreported, at 26, 1999 Ohio App. LEXIS 6101. Under Crim.R. 52(B), however, this court has the power to recognize plain error or defects involving substantial rights even if they are not brought to the attention of the trial court. State v. Moreland (1990), 50 Ohio St.3d 58, 62.
In the context of a criminal case, a court of review should invoke the plain error doctrine with the utmost caution, under exceptional circumstances, and only to prevent a miscarriage of justice. State v.Jenks (1991), 61 Ohio St.3d 259, 282; State v. Long (1978),53 Ohio St.2d 91, paragraph three of the syllabus; Holley at 26. Thus, plain error does not exist unless, but for the error, the outcome of the proceeding would have been different. Jenks at 282; Moreland at 62;Long at paragraph two of the syllabus; Holley at 26-27.
Generally, "a defendant is entitled to have the jury instructed on all elements that must be proved to establish the crime with which he is charged[.]" State v. Adams (1980), 62 Ohio St.2d 151, 153. See, also,State v. Comen (1990), 50 Ohio St.3d 206, paragraph two of the syllabus (holding that "[a]fter arguments are complete, a trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder."); State v. Simon (May 26, 2000), Lake App. No. 98-L-134, unreported, at 15, 2000 WL 688728.
However, the "[f]ailure of a trial court to separately and specifically instruct the jury on every essential element of each crime with which an accused is charged does not per se constitute plain error under Crim.R. 52(B)." (Emphasis added.) Adams at paragraph two of the syllabus. See, also, State v. Hackett (Mar. 26, 1999), Trumbull App. No. 97-T-0232, unreported, at 15, 1999 Ohio App. LEXIS 1228.
Here, the instruction given by the trial court properly expresses the standard jury instructions for a charge of intimidation of a witness as found in 4 Ohio Jury Instructions (2000), Section 521.04, at 485-486. First, the trial court stated:
 "Before you can find [appellant] guilty, you must find beyond a reasonable doubt that * * * [appellant] knowingly attempted to influence, intimidate a witness in the discharge of their duty."
 The court then proceeded to instruct the jury on the following elements subsumed by the intimidation of a witness charge: "intimidate," "hinder," and "knowingly." Thus, appellant is correct when he argues that the trial court did not instruct the jury as to "attempt."
Appellant, however, neither requested an instruction on the element of attempt, nor did he object to the instruction as given. In Adams, the trial court failed to instruct the jury on the mens rea element of recklessness required to establish criminal liability for involuntary manslaughter. The Supreme Court of Ohio observed that the existence of recklessness was not at issue at trial because the defendant relied solely on the defense that he had never abused the victim. As a result, the Supreme Court held that the trial court's failure to instruct the jury on the essential element of recklessness did not result in a manifest miscarriage of justice.
We find the logic in Adams persuasive. At trial, appellant did not dispute that he asked Deputy Hurd to talk to Tringhese about his son's case. Instead, he maintained that his actions were not criminal in nature. Therefore, according to appellant's own testimony, he did more than attempt; he actually committed the act.
Moreover, appellant does not articulate how the failure to define "attempt" misled the jury to his prejudice. Terms of common usage in a criminal statute need not be defined for the jury. State v. Miller
(Nov. 22, 1996), Ashtabula App. No. 95-A-0077, unreported, at 9-10, 1996 Ohio App. LEXIS 5237. See, also, State v. Riggins (1986),35 Ohio App.3d 1, 8. In this court's view, reasonable minds would understand and apply the ordinary meaning of this term. Thus, even if a definition could have been given as part of the jury instructions, we are not persuaded that, but for the claimed error, the outcome of the trial would clearly have been otherwise. Appellant's first assignment of error has no merit.
In assignment of error two, appellant claims that the trial court erred by including a term in its intimidation of a witness instruction that is not contained in the offense's statutory definition. According to appellant, the trial court instructed the jury that an element of intimidation of a witness was "influence," and because the trial court did not define "influence," appellant maintains that the jury was left to speculate what the trial court intended by including the term in its instruction.
When reviewing the validity of a particular jury instruction, the challenged instruction may not be reviewed in isolation, but must be reviewed within the context of the entire charge. State v. Burchfield
(1993), 66 Ohio St.3d 261; State v. Baksi (Dec. 23, 1999), Trumbull App. No. 98-T-0123, unreported, at 34, 1999 Ohio App. LEXIS 6271. "`Reversible error ordinarily can not be predicated upon one paragraph, one sentence, or one phrase of the general charge to the jury. Where the court's charge to the jury, considered as a whole, is not prejudicial * * *, no reversible error results from a misstatement or ambiguity in a portion thereof. * * *'" (Citation omitted.) State v. Rice (1988), Lake App. Nos. 12-267 and 13-001, unreported, at 15, 1988 Ohio App. LEXIS 4313, quoting Snyder v. Stanford (1985), 15 Ohio St.3d 31, paragraph three of the syllabus.
Accordingly, even if the complained of instruction was incorrect, the instruction does not constitute plain error or defect under Crim.R. 52(B) unless, but for the error, the outcome of trial would have been different. Jenks at 282; Moreland at 62; Long at paragraph two of the syllabus; Holley at 26-27.
Appellant is correct in so far as the trial court did mistakenly include the word "influence" in its definition of intimidation of witness. Because appellant was charged with a violation of R.C.2921.04(A), the state was required to prove that appellant "knowingly attempt[ed] to intimidate or hinder * * * a witness involved in a criminal action or proceeding in the discharge of the duties of the witness." (Emphasis added.)
As we noted earlier, the trial court gave the following instruction:
 "Before you can find [appellant] guilty, you must find beyond a reasonable doubt that * * * [appellant] knowingly attempted to influence, intimidate a witness in the discharge of their duty." (Emphasis added.)
 While the trial court clearly included a term not found in the definition for intimidation of a witness, the court immediately corrected its mistake when, without pause or conjunction, the court used the correct term "intimidate." Thus, the term "influence" must be read together with the entire instruction. When that is done, it becomes obvious that the trial court merely misspoke.
As with the previous assignment of error, appellant has failed to indicate how he was prejudiced by this mistake. Once again, mere speculation that the jury may have been confused is not enough to establish that the outcome of the trial would have been different. Appellant's second assignment of error is without merit.
Under assignment of error four, appellant argues that the trial court erred when it omitted an essential element of bribery from its instructions to the jury. According to appellant, in a prosecution for bribery under R.C. 2921.02(A), the state had to prove that he had the purpose to improperly influence a public servant with respect to the discharge of the public servant's duty. Appellant believes that by omitting the term "improperly" from its instruction, the trial court committed prejudicial error requiring a reversal of his conviction for bribery. We agree.
To convict a person of bribery under R.C. 2921.02(A), the state must prove, beyond a reasonable doubt, that the defendant "with purpose to corrupt a public servant * * *, or improperly to influence him with respect to the discharge of his duty, * * * promise[d], offer[ed], or [gave] any valuable thing or valuable benefit." The trial court, however, gave the following instruction:
 "Before you can find [appellant] guilty, you must find beyond a reasonable doubt that * * * [appellant] promised or gave a thing of value, with purpose to corrupt or influence with respect to the discharge of her duty, a public servant, [Deputy Hurd], after she was employed."
 The foregoing instruction shows that the trial court made no mention whatsoever that appellant had to act with the purpose to improperly influence Deputy Hurd. However, as with the previous assignments of error, appellant failed to object to the instruction as given. As a result, appellant must show that the but for the omission, the outcome of his trial would have been different.
After considering the instructions as a whole, we determine that appellant has demonstrated that this particular instruction to the jury rose to the level of plain error. In convicting appellant of bribery, the jury had to find not just conduct that merely "influenced," but conduct that "improperly influenced" the official. Unlike the defendant inAdams, this was the precise issue appellant challenged at trial. While he admitted to speaking with Deputy Hurd, he vehemently argued that he never told her to conduct herself in a manner contrary to law. Moreover, the written instructions provided to the jury during deliberations also contained the same flaw, further exacerbating the problem.
Thus, there was a failure to instruct the jury that they had to determine if appellant improperly influenced Deputy Hurd in the discharge of her duty. This omission amounted to a manifest injustice being perpetrated on appellant, thereby rising to the level of plain error under Crim.R. 52(B). Hackett at 17-18. As a result, appellant's fourth assignment of error is well-taken.
In assignments of error three and five, appellant maintains that he received ineffective assistance of counsel due to his attorney's failure to object to the alleged erroneous jury instructions discussed above. In assignment of error three, appellant argues that he was prejudiced by this conduct because the jury was not instructed on an essential element of intimidation of a witness (attempt), and because the jury was misled to believe that another term (influence) was part of the offense's definition. In assignment of error five, he claims that the jury was also misled with respect to his conviction for bribery because the jury was essentially instructed that any influence with respect to the discharge of Deputy Hurd's duty was criminal.
To be successful on a claim of ineffective assistance of counsel, a defendant must meet the two-pronged test originally articulated by the United States Supreme Court in Strickland v. Washington (1984),466 U.S. 668, and adopted by the Supreme Court of Ohio in State v.Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus. See, also, State v. Sherman (June 25, 1999), Portage App. No. 98-P-0009, unreported, at 7-8, 1999 Ohio App. LEXIS 2940.
First, a defendant must be able to show that his trial counsel was deficient. Bradley at 141. This requires a showing that trial counsel made errors so serious that, in effect, the attorney was not functioning as the "counsel" guaranteed by both the United States and Ohio Constitutions. Id.
Second, a defendant must show that the deficient performance prejudiced his defense. Id. at 142. This requires a showing that there is "a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Id. at paragraph three of the syllabus. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. at 142. A reviewing court must always remember that "the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland at 686.
There is a strong presumption in Ohio that a licensed attorney is competent. State v. Smith (1985), 17 Ohio St.3d 98, 100; Sherman at 8-9. Accordingly, to overcome this presumption, a defendant must show that the actions of his attorney did not fall within a range of reasonable assistance. State v. Smith (Dec. 22, 2000), Portage App. Nos. 99-P-0039 and 99-P-0040, unreported, at 18, 2000 Ohio App. LEXIS 6115.
Based on our previous determination, the trial court's instructions with respect to intimidation of a witness, as given, were not prejudicial to appellant. Therefore, we conclude that appellant's attorney was not ineffective for failing to object to them because appellant has failed to show that his attorney's actions fell below the level of reasonable representation or that he was prejudiced by his attorney's conduct. Accordingly, appellant's third assignment of error has no merit.
However, with regard to the bribery instructions, we reach a different result. The failure to inform the jury that appellant had to improperly influence Deputy Hurd in the discharge of her duty certainly could have prejudiced his defense. This is especially true in light of the fact that appellant's position at trial was that his actions were proper. Therefore, looking at the record, this court concludes that there was a reasonable probability that the outcome of the trial would have been different sufficient to undermine any confidence in the outcome. Appellant's fifth assignment of error has merit.
In his sixth assignment of error, appellant argues that his conviction for bribery was supported by insufficient evidence. According to appellant, an examination of the tapes together with the trial testimony shows that at no time whatsoever did he request that Deputy Hurd act in her official capacity as a Portage County deputy sheriff. However, given our disposition of appellant's third and fifth assignments of error regarding his bribery conviction, any analysis with respect to this assignment of error is moot and need not be addressed. App.R. 12(A)(1)(c).
In assignment of error seven, appellant maintains that his conviction for intimidation of a witness is also not supported by sufficient evidence. He believes that because Deputy Hurd did not actually contact Tringhese or Lewis, there was no evidence that he knowingly attempted to do any act prohibited by R.C. 2921.04(A).
When reviewing the sufficiency of the evidence to support a criminal conviction, a court must examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average juror of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.Jenks at paragraph two of the syllabus, citing Jackson v. Virginia
(1979), 442 U.S. 307. See, also, State v. Schlee (Dec. 23, 1994), Lake App. No. 93-L-082, unreported, at 16, 1994 Ohio App. LEXIS 5862.
To convict appellant of intimidation of a witness, the state was required to prove that appellant "knowingly attempt[ed] to intimidate or hinder the victim of a crime in the filing or prosecution of criminal charges or a witness involved in a criminal action or proceeding in the discharge of the duties of the witness." R.C. 2921.04(A).
Appellant claims that Deputy Hurd took no substantial step that would result, if successful, in the intimidation of a witness. This statement, however, misconstrues what the state was required to prove to convict appellant of the offense. Instead of showing that Deputy Hurd took a substantial step toward the commission of the crime, all the state had to show was that appellant made an effort to intimidate a witness. Here, appellant solicited Deputy Hurd's services and advised her on what to do, how to present herself, and what to say (specifically, that Tringhese and Lewis could be facing charges for their conduct on the night in question).
Therefore, after conducting an exhaustive review of the record, we conclude that when viewed in a light most favorable to the prosecution, this evidence was sufficient to prove beyond a reasonable doubt that appellant attempted to intimidate or hinder the victim and/or a witness of the alleged assault. Appellant's seventh assignment of error is without merit.
Under his final assignment of error, appellant argues that both of his convictions are against the manifest weight of the evidence. Again, because we have concluded that appellant's conviction for bribery is contrary to law, we will limit our discussion under this assignment of error to his conviction for intimidation of a witness.
When reviewing a claim that the judgment was against the manifest weight of the evidence, an appellate court must review the entire record, weigh both the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that a new trial must be ordered. Statev. Martin (1983), 20 Ohio App.3d 172, 175. See, also, State v.Thompkins (1997), 78 Ohio St.3d 380, 387.
"The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175. The role of the appellate court is to engage in a limited weighing of the evidence introduced at trial in order to determine whether the state appropriately carried its burden of persuasion. Thompkins at 390 (Cook, J., concurring). In doing so, the reviewing court must defer to the factual findings of the trier of fact to the weight to be given the evidence and the credibility of the witnesses. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph two of the syllabus.
After reviewing the entire record and weighing the evidence presented along with all reasonable inferences, and considering the credibility of the witnesses, we conclude that the jury did not lose its way or create a manifest miscarriage of justice in connection with appellant's conviction for intimidation of a witness. The weight of much of the testimony presented rested on the credibility of the witnesses. However, the credibility of witnesses, most importantly that of appellant and Deputy Hurd, was a critical issue for the jury to decide. State v. Burrier
(June 16, 2000), Geauga App. No. 98-G-2126, unreported, at 21, 2000 Ohio App. LEXIS 2665. This court will not disturb those findings on appeal unless the testimony in question was completely lacking in credibility, which in the case at bar, it was not. As a result, appellant's eighth and final assignment of error is meritless.
Based on the foregoing analysis, appellant's conviction for intimidation of a witness is affirmed. However, his conviction for bribery is reversed, and the matter is remanded for further proceedings consistent with this opinion.
 ___________________________________ JUDGE JUDITH A. CHRISTLEY
O'NEILL, P.J., concurs in judgment only, CACIOPPO, J. Ret., Ninth Appellate District, sitting by assignment, concurs.
[1] At the time of his convictions, appellant was a sergeant with the Portage County Sheriff's Department.
[2] Apparently, the altercation involving appellant's son had occurred at Tringhese's home.
[3] Sedita testified that, in the past, he had used off-duty police officers as private investigators so long as the officers were not from the same jurisdiction where the case was pending.